**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NEWPORT NEWS DIVISION**

| | |
|---|---|
| In re: Grand Jury Subpoena,<br><br>MATTHEW COLE,<br><br>Subpoenaed Party. | Case No. 4:26dml<br><br>4:25G1/NN25-2386 |

**REPLY IN SUPPORT OF MATTHEW COLE'S MOTION TO COMPEL DISCLOSURE OF ANY SUBPOENA, COURT ORDER, OR WARRANT TO THIRD PARTIES**

Matthew Cole, by and through counsel, submits this reply in further support of his motion to compel disclosure of any subpoena, court order, or warrant issued to any third party in connection with efforts to seek his information or records as part of this investigation.

## INTRODUCTION

As Judge Porter noted earlier this year, "if [the government is] relying on the presumption of regularity, one might think that the government needs to follow its own policy." Hr'g Tr. at 11:4–7, *In re Grand Jury Subpoena*, No. 1:26-dm-1-WBP (E.D. Va. May 22, 2026), ECF No. 18-10. The Government's opposition to Mr. Cole's Motion to Quash, ECF Nos. 1, 2, relies heavily on that presumption, asking this Court to endorse the testimonial subpoena issued to Mr. Cole (the "Subpoena") despite the absence of any evidentiary submission supporting the Government's assurances of good faith and regular order. *See* ECF No. 8 at 16–19. In its opposition to this motion, however, the Government effectively concedes that the Department of Justice has violated its regulations governing the issuance of media-related process in at least one respect: DOJ has

never notified Mr. Cole of demands made to third parties for his information, as the regulations require. The Government's purported compliance with its regulations was central to Magistrate Judge Miller's Report and Recommendation, ECF No. 12 ("R&R"), and Mr. Cole's assertions of non-compliance are central to his objections to the R&R, ECF No. 16. In addition, as Judge Trenga has recently concluded, the Government's review of records involving a reporter's newsgathering activities implicates that reporter's First Amendment rights. Mr. Cole can present arguments concerning his rights and how the Government's conduct may have infringed on them only if has notice of third-party process. Mr. Cole therefore respectfully requests that the Court order the Government to disclose whether it has sought his records from third parties and any steps it took to comply with DOJ guidelines governing such process. Because of the importance of the issues presented by this motion and their potential effect on the Court's handling of Mr. Cole's objections to the R&R, Mr. Cole also requests that the Court set this matter for oral argument.

## ARGUMENT

The Court should compel disclosure of third-party process related to demands for Mr. Cole's information or records (or for those of his family members or similar associates) for two reasons. First, the existence of and circumstances surrounding the issuance of such process are material to the Court's resolution of the Motion to Quash. Second, demands on third parties to produce records that reflect Mr. Cole's newsgathering activities implicate First Amendment and common-law privileges, and Mr. Cole requires notice of such demands to challenge them effectively.

### I. Disclosure of Third-Party Process Is Necessary to Resolve the Motion to Quash

The Government's oppositions to Mr. Cole's motions all but concede that the Government has sought or seized his records or communications from third parties. ECF No. 8 at 4. The Government references process that it obtained from the Court before issuing the testimonial

Subpoena in February 2026, ECF No. 8 at 4, and the clear implication—particularly following the Government's opposition to Mr. Cole's Motion to Compel Disclosure, ECF Nos. 13, 14 ("Motion to Compel")—is that such process encompassed information relating to Mr. Cole and his reporting activities. *See* ECF No. 17 at 1–2. As the Motion to Compel explains, 28 C.F.R. § 50.10(e) specifically addresses these circumstances. It provides that the Department "shall" notify the reporter of third-party process in advance except in extenuating circumstances that are not present in a case like this, where the subject of the third-party process is already aware of the investigation.[1] When the Department does not provide advance notice, 28 C.F.R. § 50.10(e)(2) instructs that any delay in notification may not exceed 90 days.[2] Mr. Cole has received no notice from the Department more than six months after service of the testimonial Subpoena—twice the prescribed

1 Section 50.10(e)(1) provides:

> (i) When the Attorney General has authorized the use of a subpoena, court order, or warrant to obtain from a third party communications records or business records of a member of the news media, the affected member of the news media shall be given reasonable and timely notice of the Attorney General's determination before the use of the subpoena, court order, or warrant, unless the Attorney General determines that, for compelling reasons, such notice would pose a substantial threat to the integrity of the investigation, risk grave harm to national security, or present an imminent risk of death or serious bodily harm.
>
> (ii) The mere possibility that notice to the affected member of the news media, and potential judicial review, might delay the investigation is not, on its own, a compelling reason to delay notice.

2 "[T]he United States Attorney or Assistant Attorney General responsible for the matter shall provide to the affected member of the news media notice of the order or warrant as soon as it is determined that such notice will no longer pose a substantial threat to the integrity of the investigation, risk grave harm to national security, or present an imminent risk of death or serious bodily harm. In any event, such notice shall occur within 45 days of the government's receipt of any return made pursuant to the subpoena, court order, or warrant, except that the Attorney General may authorize delay of notice for an additional 45 days if he or she determines that, for compelling reasons, such notice would pose a substantial threat to the integrity of the investigation, risk grave harm to national security, or present an imminent risk of death or serious bodily harm. No further delays may be sought beyond the 90-day period." 28 C.F.R. § 50.10(e)(2).

time limit even if compelling circumstances could have justified any delay. *See* Motion to Compel at 3; Motion to Compel Ex. A. The failure to notify Mr. Cole of any such process constitutes a *per se* violation of those provisions.

Until now, the Government has represented that it has complied with DOJ regulations, and the R&R credited that representation. *See* ECF No. 8 at 16–17; R&R at 16–20. The R&R cited the Government's asserted compliance as a basis for distinguishing the subpoena at issue here from other subpoenas the Government issued—and subsequently withdrew—earlier this year. R&R at 16–20; 24. But now that Mr. Cole has identified a violation of those regulations, the Government changes course. Rather than explain how its conduct complied with the regulations, it argues that because the regulations do not create privately enforceable rights, Mr. Cole has no grounds to question—and the Court has no basis to consider—whether the Department satisfied the requirements imposed by 28 C.F.R. § 50.10(e). *See generally* ECF No. 17.

The Government is correct that the Department's regulations do not by their own force create a private right of action or a freestanding remedy for their violation. *See* ECF No. 17 at 3–15; *see also* 28 C.F.R. § 50.10(i). But as Judge Porter observed, the Government's compliance bears heavily on whether the Government is entitled to a presumption of regularity and whether it acted in good faith in issuing the Subpoena. *See* Hr'g Tr. at 11:4–7, *In re Grand Jury Subpoena*, No. 1:26-dm-1-WBP (E.D. Va. May 22, 2026), ECF No. 18-10. Courts have considered the Department's adherence to these regulations for precisely those purposes. The Supreme Court discussed the Department's regulations in *Branzburg*,[3] and courts in this and other Circuits have

3 *Branzburg v. Hayes*, 408 U.S. 665, 706–07 n.41 (1972) ("The Guidelines for Subpoenas to the News Media . . . recogniz[e] that compulsory process in some circumstances may have a limiting effect on the exercise of First Amendment rights. In determining whether to request issuance of a subpoena to the press, the approach in every case must be to weigh that limiting

considered the Government's compliance in evaluating the slew of subpoenas issued to members of the media over the last several months.[4]

The absence of a private cause of action for violation of the regulations does not render them irrelevant to the Court's assessment of the Subpoena's validity. The Government cannot invoke its asserted compliance when doing so supports enforcement of its Subpoena, ECF No. 8 at 16–17, only to insist that compliance is irrelevant when pressed with evidence of non-compliance, ECF No. 17 at 3–5. Nor can the Government avoid the compliance question by arguing, as it did in its opposition to the Motion to Quash, that the regulations reduce only to the requirement that the Attorney General approve the Subpoena. *See* ECF No. 8 at 17. Section 50.10(e)(2) not only requires Attorney General approval but also specifies what the Attorney General may or may not permit. It states that "the Attorney General may authorize delay of notice for an additional 45 days if he or she determines that, for compelling reasons, such notice would pose a substantial threat to the integrity of the investigation, risk grave harm to national security, or present an imminent risk of death or serious bodily harm." 28 C.F.R. § 50.10(e)(2). It then makes clear that "[n]o further delays" beyond a total of 90 days are permissible. 28

---

effect against the public interest to be served in the fair administration of justice." (internal quotations omitted)).

4 Hr'g Tr. at 17:2–21:11, *In re Grand Jury Subpoena*, No. 1:26-dm-1-WBP (E.D. Va. May 22, 2026), ECF No. 18-10 (questioning the government's attorneys about compliance with DOJ regulations); Hr'g Tr. at 11:14–16:13, *In re Grand Jury Subpoenas Dated July 10, 2026*, No. 1:26-mc-352-AS (S.D.N.Y. July 23, 2026), ECF No. 50 (confirming the government's awareness of the regulations and probing whether the government attempted to comply); *In re Search Warrants*, Nos. 26-mj-205 (JFD); 26-mj-206 (JFD); 26-mj-207 (JFD); 26-mj-208 (JFD), 2026 WL 1487454, at *3 (D. Minn. Mar. 6, 2026) (citing the lack of compliance with various components of 28 C.F.R. § 50.10(c), including no indication of negotiations and a lack of narrowly drawn warrant applications); *see also In re Williams*, 766 F. Supp. 358, 362 & n.6 (W.D. Pa. 1991) (noting negotiations must be pursued when seeking to subpoena members of the media, pursuant to 28 C.F.R. § 50.10(c)).

C.F.R. § 50.10(e)(2). The failure to provide such notice beyond that time is therefore a violation of the regulations regardless of what the Attorney General has approved. It may be a violation for which the regulations themselves provide no remedy, but it is a violation nonetheless, with consequences for the Motion to Quash.

Given the arguments the Government has made throughout this proceeding—and the R&R's reliance on the Government's asserted regularity in issuing this Subpoena—both the Court and Mr. Cole should know whether the Government failed to abide by its own policy in issuing third-party process seeking Mr. Cole's records.[5] The public also should know if the Department has declined to follow the policies and procedures set forth in the Code of Federal Regulations.[6]

## II. Mr. Cole Needs Notice of Third-Party Process To Assert First Amendment and Common-Law Challenges to the Review of His Newsgathering Activities

The Government contests Mr. Cole's standing to compel disclosure of demands for his records made to third parties on the same basis that it opposes Mr. Cole's Motion to Quash. ECF No. 17 at 1–3; *see generally* ECF No. 8. But the Government's premise assumes the merits; as Mr. Cole has explained at length in his briefing, he disputes the assertion that he does not have any First Amendment or common-law protections as a reporter. *See* Motion to Quash at 10–13; ECF No. 9 at 6–10; ECF No. 16 at 10–12. Regardless of the ultimate outcome of the Motion to Quash, Mr. Cole undoubtedly has the right to challenge legal process relating to his journalistic activities.

---

[5] In the alternative, if the Court denies this Motion to Compel, it should order the Government to disclose to the Court what additional process the Government sought and the steps taken to comply with the regulations, including 28 C.F.R. § 50.10(e). The Court should take those facts into account in adjudicating the Motion to Quash.

[6] Mr. Cole's motion to unseal this proceeding is pending before the Court. *See* ECF No. 10. However, the Government has conceded that with only a few exceptions—none of which relate to compliance with the Department's media policy—the matter should be made available to the public. *See* ECF No. 15. Therefore, the Government appears to concede that compliance with its internal regulations is generally subject to a presumption of public access.

Courts in this District and across the country have consistently recognized the right of a reporter like Mr. Cole to challenge the use of criminal tools to obtain records that contain or reflect his newsgathering work.[7] Mr. Cole can make such a challenge only if he has notice.

*Branzburg* noted that reporters retain First Amendment interests in their journalistic activity even in the face of grand jury investigations. ECF No. 9 at 6 (citing *Branzburg v. Hayes*, 408 U.S. 665, 707 (1972)). The Court wrote that "news gathering is not without its First Amendment protections"; that "without some protection for seeking out the news, freedom of the press could be eviscerated"; and therefore that grand juries "must operate within the limits of the First Amendment." *Branzburg*, 408 U.S. at 681, 707–08. Justice Powell's concurrence rejected the reading the Government continues to advance: "The Court does *not* hold that newsmen, subpoenaed to testify before a grand jury, are without constitutional rights with respect to the gathering of news or in safeguarding their sources." *Id.* at 709 (Powell, J., concurring) (emphasis added).

---

[7] *See generally United States v. Sterling*, 724 F.3d 482 (4th Cir. 2013) (reviewing the government's appeal of the district court order quashing a subpoena issued to a reporter for testimony related to his newsgathering); *In re Grand Jury Subpoena, Judith Miller*, 438 F.3d 1141, 1171 (D.C. Cir. 2006) (assessing reporters' protections arising from the First Amendment in connection with a subpoena for grand jury testimony); *Farr v. Pitchess,* 522 F.2d 464 (9th Cir. 1975) (discussing the extent of protection afforded by the First Amendment to a reporter resisting disclosure of news sources); Memorandum Opinion and Order, *In the Matter of the Search of the Real Property and Premises of Hannah Natanson*, 1:26-sw-00054-WBP-AJT, ECF No. 62 (E.D. Va. Feb. 24 2026) (evaluating the search of the *Washington Post* reporter's home and, balancing the reporter's First Amendment rights against the government's asserted investigative needs); Order, *In re Grand Jury Subpoena*, No. 1:26-dm-1-WBP (E.D. Va. June 9, 2026), ECF No. 18-12 (considering a *Washington Post* reporter's motion to quash a grand jury subpoena on First Amendment grounds); Hr'g Tr., *In re Grand Jury Subpoenas Dated July 10, 2026*, No. 1:26-mc-00352-AS (S.D.N.Y. July 15, 2026), ECF No. 50 (hearing on *New York Times* journalists' motion to quash grand jury subpoenas for testimony); *In re Williams*, 766 F. Supp. 358 (W.D. Pa. 1991) (reviewing reporters' motions to quash subpoenas *duces tecum* requiring them to produce documents related to a criminal trial).

Consistent with *Branzburg*, courts in this District have rejected the contention that reporters have no First Amendment interest when the Government reviews or compels their testimony or records as part of a criminal investigation. In upholding Judge Porter's conclusion that judges, not prosecutors, must review the returns of a search warrant on a *Washington Post* reporter's home, Judge Trenga observed: "The Government's expansive view of what is permissible under the Fourth Amendment entirely disregards [the reporter's] rights under . . . the First Amendment, which 'entitle[s] news reporters to some constitutional protection of the confidentiality of their sources.'" Memorandum Opinion and Order, *In the Matter of the Search of the Real Property and Premises of Hannah Natanson*, 1:26-sw-00054-WBP-AJT, ECF No. 122 at *9–10 (E.D. Va. May 4, 2026) (quoting *Ashcraft v. Conoco, Inc.*, 218 F.3d 282, 287 (4th Cir. 2000), for the proposition that "[s]uch protection is necessary to ensure a free and vital press, without which an open and democratic society would be impossible to maintain.").

Judge Trenga specifically rejected the Government's reliance on *Sterling* where, as is presumably the case here if the Government has sought third-party records or communications, the Government obtained information about the reporter that was not confined specifically to the article at issue. "Important for this case," Judge Trenga observed, "is that the Fourth Circuit in *Sterling* recognized that the subpoenaed testimony at issue went 'to the heart of the prosecution' and there was no reason to believe that testimony would 'implicate confidential source relationships without a legitimate need of law enforcement.'" *Id.* at *11 (quoting *Sterling*, 724 F.3d at 499) (alteration omitted). As in *Natanson*, the government process may well have implicated source relationships unrelated to this investigation, and so the Court should not countenance the Government's refusal to say whether it has followed its own regulations or disclose the breadth of the information it has sought about Mr. Cole and his journalistic contacts.

This Court should follow Judge Trenga in recognizing that the "Government's legitimate interest in protecting the community is not absolute and does not subordinate in wholesale fashion protected individual civil liberties." *Id.* at *16–17. And to fulfill its "tas[k of] 'balanc[ing] between the conflicting and sensitive interests at stake,'" *id.* at *17 (quoting *United States v. Alter*, 482 F.2d 1016, 1026 (9th Cir. 1973)), the Court should require that the Government disclose when, how, and to what extent it has sought to gather information reflecting Mr. Cole's newsgathering activities. Mr. Cole is unable meaningfully to challenge the Government's conduct concerning such activities unless he is made aware of the steps taken and the process issued.

## CONCLUSION

For the foregoing reasons, the Court should order the Government to disclose any process issued to third parties seeking records or information relating to Mr. Cole or anyone associated with him, including whether such process complied with the Department's regulations.

Dated: August 24, 2026

Respectfully submitted,

*<u>/s/ Andrew Bosse</u>*

Andrew Bosse (VSB No. 98616)
abosse@bkbfirm.com
BAUGHMAN KROUP BOSSE PLLC
500 East Main Street, Suite 1400
Norfolk, Virginia 23510
Tel: (757) 904-5373

David A. O'Neil*
daoneil@debevoise.com
DEBEVOISE & PLIMPTON LLP
801 Pennsylvania Ave NW
Washington, DC 20004
Tel: (202) 383-8000

*Counsel for Movant Matthew Cole*
*Admitted *pro hac vice.*

**CERTIFICATE OF SERVICE**

I certify that on August 24, 2026, I sent a true and correct copy of the foregoing to counsel for the Government in the United States Attorney's Office for the Eastern District of Virginia and the National Security Division of the Department of Justice by electronic mail.

*/s/ Andrew Bosse*____________
Andrew Bosse (VSB No. 98616)
abosse@bkbfirm.com
BAUGHMAN KROUP BOSSE PLLC
500 East Main Street, Suite 1400
Norfolk, Virginia 23510
Tel.: (757) 904-5373

*Counsel for Movant Matthew Cole*